IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-164-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> v. ) <br> ) <br> DETRAY MAURICE WILLIAMS, ) <br> ) <br> Defendant. ) | **ORDER** |

On January 29, 2021, Detray Maurice Williams ("Williams" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 68]. On March 18, 2022, the government responded in opposition [D.E. 74]. As explained below, the court denies Williams's motion.

I.

On October 5, 2015, pursuant to a written plea agreement, Williams pleaded guilty to possession with intent to distribute cocaine base (crack) (count three), possession of a firearm in furtherance of a drug-trafficking crime (count six), and possession of a firearm by a felon (count seven). See [D.E. 33, 35]. On March 10, 2016, the court held Williams's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 45]; [D.E. 48]. The court calculated Williams's total offense level to be 30, his criminal history category to be VI, and his advisory guideline range to be 262 to 327 months' imprisonment. See PSR ¶ 77. After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18

U.S.C. § 3553(a), the court sentenced Williams to 84 months' concurrent imprisonment on counts three and seven to be followed by 60 months' consecutive imprisonment on count six for a total term of 144 months' imprisonment. See [D.E. 49]. Williams did not appeal.

On June 22, 2016, and March 6, 2017, Williams moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based on Johnson v. United States, 576 U.S. 591 (2015), and Welch v. United States, 578 U.S. 120 (2016). See [D.E. 50, 57]. On January 17, 2019, the court granted the government's motion to dismiss, denied Williams's section 2255 motions, and denied a certificate of appealability. See [D.E. 64]. Williams did not appeal.

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is

2

nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and

3

compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13, cmt. n.2.

Williams does not state that he has exhausted his administrative remedies or that he applied to his warden for compassionate release and 30 days have lapsed since he submitted the request. The government has invoked section 3582(c)(1)(A)'s exhaustion requirement as a basis for dismissal and has filed an administrative remedies report showing the BOP has not received a request from Williams for compassionate release. See [D.E. 74] 21–22; [D.E. 74-1] 2. Accordingly, the court denies Williams's motion for compassionate release because he has not met section 3582(c)(1)(A)'s threshold timing requirements. See Muhammad, 16 F.4th at 130.

Alternatively, the court denies Williams's motion on the merits. In support of his motion for compassionate release, Williams cites the COVID-19 pandemic, his health conditions, and the need to provide care for his mother. See [D.E. 68]. As for his medical conditions, Williams argues that his cataracts, glaucoma, and other eye problems place him at heightened risk of serious infection from COVID-19. See id. at 2–6. Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Williams does not argue that the BOP is not treating

4

and monitoring his conditions or that he is unable to provide self-care while incarcerated. Cf. [D.E. 75] (medical records).

Although Williams argues his health conditions place him at heightened risk of serious infection from COVID-19, Williams has declined to receive a COVID-19 vaccine and has provided no medical, religious, or other reason why he cannot receive a COVID-19 vaccine. Williams can "significantly ameliorate[]" his risk by getting a vaccine and "may not perpetuate [his] own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect" him. United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished). Because Williams decided to "remain[] at elevated risk because he has declined to be vaccinated," he cannot "plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see, e.g., United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021), cert. denied, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Moreover, the wide availability of vaccines for Williams and others means Williams "largely faces the same risk from COVID-19 as those who are not incarcerated." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Accordingly, granting

5

compassionate release because of Williams's health conditions and the general risk of COVID-19 in prison does not comport with the "medical condition of the defendant" policy statement. See 18 U.S.C. § 3582(c)(1)(A).

Williams argues the need to care for his mother is an extraordinary and compelling reason justifying compassionate release. Williams's mother is in her mid-seventies, and Williams argues he is her only caregiver and that she is at heightened risk of serious infection from COVID-19 because of her underlying medical conditions. See [D.E. 68] 1, 7. Williams does not describe his mother's underlying health conditions. Under the "family circumstances" policy statement, extraordinary and compelling circumstances may exist because of "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). By its plain terms, the policy statement does not apply to family circumstances involving a defendant's parents. Nonetheless, the court assumes Williams is his mother's only caregiver and that this fact, along with Williams's mother's medical conditions and risk from COVID-19, constitutes an extraordinary and compelling reason. See 18 U.S.C. § 3582(c)(1)(A).

The court assumes without deciding that COVID-19, Williams's health conditions, his family circumstances, and his rehabilitation efforts constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Williams's

6

sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Williams is 43 years old and is incarcerated as a career offender for possession with intent to distribute cocaine base (crack), possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm by a felon. See PSR ¶¶ 1–8. Williams was responsible for distributing 25.38 grams of crack cocaine and 0.3 grams of heroin. See id. ¶ 15. Williams also possessed 15 firearms, some of which Williams helped steal during a burglary. See id. ¶¶ 12, 15. Unfortunately, Williams's serious criminal behavior was nothing new. Before incurring the convictions for which he is incarcerated, Williams had a lengthy, violent criminal record, including convictions for simple assault (four counts), larceny (four counts), assault on a female, resisting a public officer, carrying a concealed gun, false imprisonment (pleaded down from a kidnapping charge), breaking or entering, possession of a schedule II controlled substance, sale and delivery of cocaine, conspiracy to commit armed robbery (for involvement in robbing a grocery store with a sawed-off shotgun), and robbery with a dangerous weapon (for using a rifle to rob a McDonald's). See id. ¶¶ 21–36. Williams also has a terrible record during prior incarceration, incurring 45 infractions during one term of incarceration. See id. ¶ 35. Williams also has a poor record on supervision, including using drugs and failing to comply with house arrest and electronic monitoring. See id.

Williams has taken some positive steps while federally incarcerated. For example, Williams has taken education courses, including courses toward obtaining his GED. See [D.E. 74-1] 6. Williams has maintained employment while incarcerated. See id. at 7–8. Williams, however, has a horrible disciplinary record and has incurred infractions for assault, possession of a dangerous weapon, and possession of narcotics. See id. at 3–4. Williams also incurred an infraction for possessing cell phone paraphernalia. See id. at 3. The court views the possession of cell phones and

7

cell phone paraphernalia in custody as serious misconduct. Cf. United States v. Melton, 761 F. App'x 171, 172–78 (4th Cir. 2019) (per curiam) (unpublished).

The court must balance Williams's mixed rehabilitation efforts with his serious criminal conduct, his terrible criminal history, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Williams's potential exposure to COVID-19, his medical conditions, and his family circumstances. Williams has not presented a release plan for the court's consideration. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Williams's arguments, the government's persuasive response, the need to punish Williams for his serious criminal behavior, to incapacitate Williams, to promote respect for the law, to deter others, and to protect society, the court denies Williams's motion for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

## III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 68].

SO ORDERED. This 23 day of June, 2022.

JAMES C. DEVER III
United States District Judge

8

Case 5:15-cr-00164-D    Document 78    Filed 06/23/22    Page 8 of 8